IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:13CR173 |
| | ) | 1:16CV2980 |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | |
| KELLY ALLEN IRBY, | ) | ORDER ON MOTION TO VACATE, |
| | ) | SET ASIDE OR CORRECT SENTENCE |
| Defendant. | ) | PURSUANT TO 28 U.S.C. §2255 |
| | ) | |

This matter is before the Court on Petitioner Kelly Allen Irby's Motion to Vacate Conviction and/or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 44). Petitioner's motion raises claims of ineffective assistance of counsel. For the reasons set forth below, his motion lacks merit and is DENIED.

**PROCEDURAL BACKGROUND**

On April 2, 2013, a federal grand jury returned a two count indictment charging Kelly Allen Irby ("Irby") and Sherrea Fitzpatrick ("Fitzpatrick") with conspiracy to possess with intent to distribute approximately 570 grams of a mixture or substance containing a detectable amount of phencyclidine (PCP), a Schedule II controlled substance; and, knowingly and intentionally

attempting to possess with intent to distribute same in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B). (R. 1: Indictment, PageID 1, 1-4). Irby was arrested on June 10, 2015. (R. 27: Arrest Warrant, PageID 140, 141). On June 29, 2015, the Court appointed Attorney Robert A. Incorvati as counsel for Irby, an arraignment was held and Irby entered a plea of not guilty to the charges in the indictment. (R. --: Non-Document). A jury trial was set for August 24, 2015. (Id.). Irby waived his right to a detention hearing and consented to be held without bail pursuant to 18 U.S.C. § 3142(e) and (i). (R. 30: Waiver, PageID 158).

On August 7, 2015, Irby filed a Notice of Intent to Change Plea. (R. 33: Notice, PageID 174). At a hearing on August 12, 2015, Irby entered a guilty plea as to Count 1 of the Indictment and entered into a plea agreement. (R. 34: Plea Agreement, PageID 175). On December 3, 2015, Irby was sentenced to a term of imprisonment of 70 months with credit for time served on Count 1 of the Indictment, four years supervised release and a special assessment of $100. (R. 43: Judgment, PageID 230, 231, 234). In addition, the Special Conditions of Supervision ordered Irby to participate in an approved program of substance abuse testing and/or outpatient or inpatient substance abuse treatment, and abide by the rules of the treatment program. (Id. at PageID 233). On motion of the United States, Count 2 of the Indictment was dismissed. (Id. at PageID 230). Irby did not file a Notice of Appeal.

On December 13, 2016, Irby filed the instant *Motion to Vacate Under 28 U.S.C. § 2255* wherein he claims ineffective assistance of counsel due to counsel's deficiency in two areas where Irby claims to have been prejudiced: (1) "in that the evidence seized was obtained illegally" and (2) "that the sentence was not based on actual weight." (R. 44-1: Memorandum in Support, PageID 250, 251). Specifically, as to "actual weight" Irby alleges counsel was ineffective "in his challenge to the sentence" as the "record is not clear as to whether the drugs

2

recovered had gone to the crime lab to be analyzed in order to determine their purity level." (Id. at PageID 256). Irby further requests an evidentiary hearing "in order to determine the finality of the issues raised . . . ." (Id. at PageID 257).

## STATEMENT OF THE FACTS

Between on or about February 5, 2013, and February 7, 2013, in the Northern District of Ohio, Eastern Division, and elsewhere, Irby and Fitzpatrick did conspire to possess with intent to distribute approximately 570 grams of a mixture or substance containing a detectable amount of phencyclidine (PCP), a Schedule II controlled substance. Irby arranged for a parcel containing 100 grams or more of PCP shipped from a Las Vegas, Nevada, post office to Fitzpatrick at her sister's residence in Shaker Heights, Ohio.

It was part of the conspiracy that Fitzpatrick would take possession of the parcel and remove the package containing the PCP from the parcel for distribution to unknown co-conspirators in the Northern District of Ohio. Fitzpatrick removed the package containing the PCP and placed it inside a closet at her sister's residence. In an attempt to conceal the conspiracy, Irby mailed the parcel using an incorrect return address and a fictitious addressee from Las Vegas and, Fitzpatrick accepted delivery of the parcel by signing the name "Kimmy Bell."

On February 6, 2013, while conducting drug parcel interdiction at the Main Post Office in Cleveland, Ohio, a United States Postal Inspector (the "Postal Inspector"), having been trained in detection and investigation of prohibited mailing offenses, identified the parcel mailed by Irby as a suspected drug parcel based on several factors including but not limited to origin, method of mailing, and size. The parcel was described as a brown cardboard box, measuring approximately 12"x12"x10" in size and weighing approximately 9 lbs., 4 oz. The parcel mailed on February 5,

3

2013, originated from Las Vegas, Nevada, historically known to be a major source area for controlled substances mailed to Northern Ohio. The Postal Inspector made inquiries with the Accurint database to determine the legitimacy of the address information. The Postal Inspector was unable to associate the name "Kimmy Bell" with the listed delivery address at 3707 Hidana [sic] Street, Shaker Heights, Ohio. The Postal Inspector was also unable to associate the name "James Bell" with the listed return address and knew that individuals using the U.S. Mails for purposes of transporting controlled substances will often place fictitious address and/or name information on the parcels to conceal their identities from law enforcement.

On February 6, 2013, the parcel was subjected to a narcotic detection canine handled by a Police Officer with the Cleveland Police Department Canine Unit. The canine gave a positive alert on the parcel, detecting the odor of an illegal drug emanating from the parcel. After establishing probable cause to believe that the U.S. Postal Service Express Mail parcel ("the parcel") addressed to Kimmy Bell, 3707 Hidana [sic] Street, Shaker Heights, Ohio 44120 and bearing a return address of James Bell, 6868 Perfect Sunset Street, Las Vegas, Nevada 89148 contained controlled substances in violation of Title 21 United States Code, Section 841(a)(1) an Application and Affidavit for Search Warrant was made, and a Search Warrant issued on February 6, 2013.

The Search Warrant allowed a search of the parcel described above. That same day, the Search Warrant was returned executed and an inventory of the property revealed approximately 32 ounces of suspect Phencyclidine (PCP) was concealed inside a gold tin can, wrapped in a plastic bag with newspaper, which was then inside a brown Phillips camera box. The parcel also contained two pairs of women's boots, one pink youth jacket, and several other children's clothing items.

4

On February 7, 2013, a second Search Warrant was issued in the State of Ohio, County of Cuyahoga, and an Affidavit sworn to before and subscribed in the presence of Timothy J. McCormick, Judge, Court of Common Pleas. The Search Warrant authorized the search of the premises, attached or detached garage, its curtilage, all vehicles located on the premises and all person therein, known as 3707 Hildana Street, Shaker Heights, Ohio. Exhibit A, Affidavit for Search Warrant, was incorporated as though rewritten as part of the Search Warrant. Paragraph 7 of the Affidavit provided notice to the Court, that with the Court's approval, a beeper was to be placed in the package and would emit a recognizable signal to alert detectives when the package was opened. In addition, law enforcement would secrete a second electronic device into the package, similar to a GPS unit, that would allow detectives to track the movement of the parcel should it be removed from the intended delivery location. The Court authorized the terms of the Search Warrant.

On February 7, 2013, a controlled delivery was made of the parcel to the 3707 Hildana Street address. A female came to the door, accepted the package and both signed and printed the name "Kimmy Bell." On April 2, 2013, a federal grand jury returned a two count indictment charging Irby and Fitzpatrick with conspiracy to possess with intent to distribute approximately 570 grams of a mixture or substance containing a detectable amount of phencyclidine (PCP), a Schedule II controlled substance; and, knowingly and intentionally attempt to possess with intent to distribute same in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B). Ultimately, both Irby and Fitzpatrick entered guilty pleas pursuant to the terms of plea agreements, and they were both sentenced and incarcerated for their crimes.

**DISCUSSION**

A motion under Section 2255 may only proceed on limited grounds. Title 28, United States Code, Section 2255, sets forth the four grounds upon which a federal prisoner may base a claim for relief: "(1) 'that the sentence was imposed in violation of the Constitution or the laws of the United States;' (2) 'that the court was without jurisdiction to impose such sentence;' (3) 'that the sentence was in excess of the maximum authorized by law;' or (4) that the sentence 'is otherwise subject to collateral attack.'" Hill v. United States, 368 U.S. 424, 426-427 (1962). To prevail on a Section 2255 motion, the petitioner must prove by a preponderance of the evidence that his constitutional rights were denied or infringed. United States v. Wright, 624 F.2d 557, 558 (5th Cir. 1980).

It is well settled that a proper Section 2255 motion does not reach alleged errors that are not of a constitutional or jurisdictional magnitude and that could have been reached by a direct appeal. Stone v. Powell, 428 U.S. 465, 477 (1976). To "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). "Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume he stands fairly and finally convicted." Id. at 164.

A defendant like Irby seeking to establish ineffective assistance of counsel must satisfy the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), where the Supreme Court formulated the following test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning

> as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687.

In attempting to establish that an attorney's performance was deficient, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. The performance inquiry must consider the prevailing circumstances at the time of trial and should not be conducted in a vacuum. Id. at 688.

Judicial scrutiny of counsel's performance "must be highly deferential." Id. at 689. A reviewing court should avoid second-guessing counsel and must ensure that "every effort is made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. Indeed, the Sixth Circuit has recognized the necessity of affording defense counsel wide latitude in making trial decisions. "Counsel may exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment." Lewis v. Alexander, 11 F.3d 1349, 1353-54 (6th Cir. 1993).

Further, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (citations omitted). The reviewing court is also required to recognize that "counsel is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.

An error by counsel, "even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. Deficiencies in counsel's performance must instead "be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id. at 692. It is not enough for the defendant to show "that the errors had some conceivable effect on the outcome of the proceeding" as virtually "every act or omission of counsel would meet this test." Id. at 693. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

In order to prevail on a § 2255 petition, Irby must establish that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

Irby filed a seven-page "Memorandum of Points and Authorities in Support of Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255" based on conjecture and allegations not supported by the record. Irby's statements may be perceived as a prelude to a claim of ineffective assistance of counsel; however, the mere

introduction of a claim of ineffective assistance of counsel is insufficient to establish an error of "constitutional magnitude" or an error that had a "substantial and injurious effect or influence on the proceedings" in order to obtain relief under § 2255. Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999) (citing Brecht v. Abrahamson, 507 U.S. 619 (1993)). Irby offers no evidence that Attorney Incorvati's counsel constituted a "'fundamental defect which inherently result[ed] in a complete miscarriage of justice,' or, an error so egregious that it amount[ed] to a violation of due process." United States v. Ferguson, 918 F.2d 627, 630 (6th Cir. 1990) (quoting Hill v. United States, 368 U.S. 424, 428 (1968)) *see also* Watson, 165 F.3d at 488.

To prevail on his claims, Irby bears the burden of proving factual assertions by a preponderance of the evidence. McQueen v. United States, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*) ("Defendants seeking to set aside their sentence pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence."). Irby fails to establish a basis for ineffective assistance of counsel. Irby's attorney's performance did not fall below the "objective standard of reasonableness" called for in Strickland.

Under 28 U.S.C. § 2255, the Court must vacate and set aside a judgment of conviction only if the Court finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . ." 28 U.S.C. § 2255. "When a federal prisoner makes a § 2255 habeas claim, [he] alleges that [his] sentence was illegal, in that it violated the United States Constitution or federal law." Logan v. United States, 434 F.3d 503, 510 (6th Cir. 2006). Under this provision a defendant "must allege one of three bases as a threshold standard: (1) an

error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." Weinberger v. United States, 268 F.3d 346, 351 (6th Cir. 2001) (citing United States v. Addonizio, 442 U.S. 178, 185-86 (1979)). Irby fails to provide support demonstrating that his claims meet any of the three elements.

Irby was afforded effective assistance of counsel because his attorney's performance did not fall below the "objective standard of reasonableness" called for in Strickland. Irby's allegations of counsel's ineffectiveness consist of broad statements with no specific factual support. Irby claims "[c]ounsel was deficient in two areas that prejudiced the Petitiioner [sic]; in that the evidence seized was obtained illegally, and that the sentence was not based on actual weight." (R. 44-1: Memorandum in Support, at PageID 251). Irby's arguments fail for the reasons stated below.

"The use of tracking devices hidden in packages and parcels as an investigative tool is hardly a secret. Cases abound describing their use in controlled deliveries." United States v. Taylor, 2015 U.S. Dist. LEXIS 169436 *7-8 (M.D. Tenn. Dec. 18, 2015) (citing *See e.g.,* United States v. Albiola, 624 F.3d 431, 434-35 (7th Cir. 2010); United States v. Moore, 612 F.3d 698, 700, 391 U.S. App. D.C. 413 (D.C. Cir. 2010); United States v. Ware, 338 F.3d 476, 478, 63 Fed. App'x 863, 865 (6th Cir. 2003); United States v. Gonzalez, 328 F.3d 543, 545 (9th Cir. 2003).

Irby cites United States v. Karo, 468 U.S. 705, 713 (1984), wherein the Supreme Court addressed a question left open by United States v. Knotts, 460 U.S. 276 (1983) and that question as summarized by Irby was: "whether the installation of a beeper in a container amounted to a search or seizure." (R. 44-1: Memorandum in Support at PageID 253). Irby's summary of the question resolved by the Supreme Court in Karo is incorrect. The actual question addressed in Karo was whether "the monitoring of a beeper in a private residence, a location not open to visual surveillance, violate[d] the Fourth Amendment right[s] to those who have a justifiable interest in the privacy of the residence." Karo, 468 U.S. at 714. Although the Supreme Court found such monitoring in violation of the Fourth Amendment, id., it has no bearing on the issue at hand in Irby.

Irby claims that his case is "exactly the case discussed [in Karo], in that there was no third owner that gave permission to place the beeper in the box, nor did the Government get consent from the owner of the house to allow the tracing device to enter her home." (R. 44-1: Memorandum in Support, PageID 254). Irby omits one key factor that differentiates the circumstances of his case from those in Karo. That is, Irby mailed a package containing Phencyclidine (PCP), a Schedule II controlled substance (R. 1: Indictment at PageID 3), and the package Irby mailed contained "contraband." Contraband items may be monitored regardless of location. *See e.g.*, United States v. Emery, 541 F.2d 887, 889-90 (1st Cir. 1976) (beeper inserted into a package containing contraband property [cocaine] which defendant had no right to possess).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probably cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The protections of the Fourth Amendment apply when a state conducts a search or seizure in an area in which there is a "constitutionally protected reasonable expectation of privacy." New York v. Class, 475 U.S. 106, 112 (1986) (quoting Katz v. United States, 389 U.S. 347, 360 (1967). It is generally recognized that it is reasonable for a person to assume that their right of privacy attaches to parcels and packages in their possession. Arkansas v. Sanders, 442 U.S 753, 764 n. 13 (1979).

When there is no reasonable expectation of privacy, the Fourth Amendment is not implicated. A search or seizure for Fourth Amendment purposes does not occur when the person lacks a reasonable expectation of privacy in the material examined. United States v. Breza, 308 F.3d 430, 433 (4th Cir. 2002) (citing Oliver v. United States, 466 U.S. 170, 177 (1984)). Therefore, a search occurs "when an expectation of privacy that society is prepared to consider reasonable is infringed." Id. (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984); *see* Illinois v. Andreas, 463 U.S. 765, 771 (1983) ("If the inspection by police does not intrude upon a legitimate expectation of privacy, there is no 'search' . . . "). Even if a search has occurred without a warrant a Fourth Amendment violation does not necessarily occur. The Fourth Amendment does not prohibit all searches, only those that are unreasonable. Skinner v. Ry. Labor Execs. Ass'n, 489 U.S. 602, 619 (1989) ("the Fourth Amendment does not proscribe all

searches and seizures, but only those that are unreasonable"). "Although as a general matter, warrantless searches 'are per se unreasonable under the Fourth Amendment,' there are 'a few specifically established and well-delineated exceptions' to that general rule." City of Ontario, Ca. v. Quon, 130 S. Ct. 2619, 2630 (2010) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)).

The rationale underlying the "contraband exception" is that an individual cannot have a legitimate expectation of privacy in "property which [he] has no right to possess," Emery, 541 F.2d at 889-90, or in property which is a direct part of a negotiated illegal transaction. United States v. Perez, 526 F.2d 859, 863 (5th Cir. 1976). Specifically, there is no legitimate expectation of privacy in articles one has no right to possess, such as contraband. United States v. Pringle, 576 F.2d 1114, 1119 (5th Cir. 1978) (the use of a beeper in a package containing contraband [heroin] was constitutionally permissible). *See* United States v. Moore, 562 F.2d 106, 111 (1st Cir. 1977) (citing Perez as a case that upheld the warrantless placing of beepers in contraband and stolen property). *See also*, United States v. Carpenter, 403 F. Supp. 361, 365 (D. Mass. 1975) (to carry the warrant protection to the placing of a "beeper" inside a package containing contraband [cocaine] which had been validly searched by law enforcement is an extension of the Fourth Amendment which no court has yet made.).

These cases and Irby's case are different when compared to Karo and Knotts. In Karo and Knotts a beeper was installed in packages containing non-contraband items. In Karo, the package contained ether. Karo, 468 U.S. at 708. In Knotts, the package contained chloroform. Knotts, 460 U.S. at 277. Both ether and chloroform are non-contraband items and not subject to the contraband exception. *See* United States v. Bailey, 628 F.2d 938, (6th Cir. 1980) (quoting United States v. Moore, 562 F.2d 106, 11 (1st Cir. 1977) and recognizing "the warrantless

insertion of a beeper in legally possessed non-contraband substances whose probable use is to make an illegal drug" and limited case authority to "concealment of beepers in contraband substances . . . which are part and parcel of an ongoing criminal transaction.")

In discussing the use of a beeper to monitor an object other than a vehicle or aircraft, such as is the case here, many courts have treated such use as relating to two separate issues: the first relating to the installation of the beeper, and the second relating to the monitoring of the beeper. *See e.g.*, United States v. Pretzinger, 542 F.2d 517, 520 (9th Cir. 1976) (per curiam); Katz v. United States, 389 U.S. 347 (1967). With regard to the installation of a beeper in or on an object other than a vehicle or aircraft, such as a package or parcel, it has been held that the warrantless installation of a beeper does not constitute a search violating the Fourth Amendment when the object to which the beeper is attached contains contraband. "The contraband exception, as currently articulated by the Supreme Court, is not limited to narcotics or canine sniffs. The only specific limitation is that the test or investigative technique must only reveal the presence or absence of contraband. Thus, an individual's person, papers, home, and effects are unprotected, so long as the test used is sufficiently discerning." Timothy C. MacDonnell, Orwellian Ramifications: The Contraband Exception to the Fourth Amendment, 41 U. Mem. L. Rev. 299, 302 & n.13 (2010).

The less intrusive nature of the beeper led several courts to hold that beepers did not involve "search" or "seizure" within the meaning of the Fourth Amendment. Beepers, unlike a bug or a wiretap, do not pick up the content of conversation and only permit the monitoring of an object's location and movement (and, in some cases, whether the object containing the beeper has been opened). *See* United States v. Emery, 541 F.2d at 888 n.1 (1st Cir. 1976). In this sense,

beepers are arguably analogous to pen registers, which have been determined to fall outside the scope of the Fourth Amendment. Smith v. Maryland, 442 U.S. 735 (1979). Sister courts have ruled the monitoring of a beeper in a package containing contraband made it impossible to conceal whereabouts of contraband but "did not make it impossible for [defendant] to conceal his movement. . . . The obtaining of this type of limited information is not a search within the mantle of the Fourth Amendment." United States v. French, 414 F. Supp. 800, 803-04 (W.D. Okla. 1976). Also, because a beeper does not overhear or record conversation, but only signals that a package had been opened, intrusion does not "rise to the level of a search requiring a warrant under the Fourth Amendment." United States v. Carpenter, 403 F. Supp. 361, 364 (D. Mass 1975). *See* United States v. Bailey, 465 F. Supp. 1138, 1140 (E.D. Mich. 1979) ("The nature of the [beeper's] intrusion into privacy is not unlike the intrusion involved in card drops and pen registers.").

It appears that Irby's claim is that counsel's failure to file a motion to suppress evidence due to an alleged Fourth Amendment violation occurring when a beeper was allegedly installed in the package without obtaining a warrant. Irby's claim lacks merit. Kimmelman v. Morrison, 477 U.S. 365 (1986). Although a warrantless installation of a beeper in a package containing contraband is legally permissible, Irby incorrectly alleged a warrant was not obtained here. A Search Warrant issued on February 7, 2013, in the State of Ohio, County of Cuyahoga, Court of Common Pleas, incorporated, as though fully rewritten, U.S. Postal Inspector Bryon Green's Affidavit, which stated:

> Before delivering the subject parcel, Detectives, with the courts approval, plan to place a court authorized beeper in the package which will emit a recognizable signal to alert Detectives when the package is opened. . . . In addition, Detectives will secrete a second electronic device in the parcel, similar

> to a GPS unit, that will allow Detectives to track the movement of the parcel should it be removed from the delivery location.

*See* Search Warrant, Feb. 7, 2013.

Irby also alleges his counsel was ineffective in his "obligations under the Sixth Amendment." (R. 44-1: Memorandum in Support, PageID 255). Irby claims that from the date of his arraignment on June 25, 2015, through the date he entered a plea agreement on August 12, 2015, there was insufficient time for counsel to obtain and review discovery in order to determine the strengths and weaknesses of his case. (Id.). In addition, Irby claims his counsel was ineffective at sentencing for failure to challenge his sentence, specifically, Irby contends the "record is not clear as to whether the drugs recovered had gone to the crime lab to be analyzed in order to determine their purity level." (Id.). Irby claims that it was counsel's duty to ensure that his sentence was based on "actual weight that was determined from the Analysis Report as to the purity of the PCP" and since he failed to do so, Irby has been prejudiced. (Id. at PageID 257).

On June 29, 2015, Attorney Robert A. Incorvati was appointed to represent Irby. (R. --: Non-Document). He represented him at arraignment the following day, June 30, 2015. (R. --: Non-Document). On July 3, 2015, a Notice of Request for Discovery and Relevant U.S.S.G. Information was filed to which Attorney Incorvati attached his initial discovery request to AUSA Henry F. DeBaggis. (R. 32: Notice, PageID 166). Anticipating a discovery request, on June 29, 2015, discovery materials were prepared and at arraignment on June 30, 2015, AUSA DeBaggis

hand delivered to Attorney Incorvati one DVD containing discovery materials that included a video and photographs; recorded telephone calls; lab reports; and phone reports. *See* Attachment B: Govt. Discovery Ltr. Also provided were copies of photographs presented at grand jury and Irby's criminal history report from February 11, 2013. *See* Attachment B: Govt. Discovery Ltr. Despite Irby's claims that there was "not enough time for discovery to be turned over and reviewed" (R. 44-1: Memorandum in Support at PageID 256); however, the record demonstrates otherwise. Discovery was prepared and provided to Attorney Incorvati and Attorney Incorvati had ample time to review the evidence and assess the strengths and weaknesses of Irby's case.

Attorney Incorvati had the obligation to conduct "a reasonably substantial, independent investigation into the circumstances and the law from which potential defenses may be derived." Baldwin v. Maggio, 704 F.2d 1325, 1332 (5th Cir. 1983). Irby provides no evidence that Attorney Incorvati failed to do just that. The determination as to whether or not an investigation is reasonably adequate "depend[s] upon a variety of factors, including the number of issues in the case, the relative complexity of those issues, the strength of the Government's case, and the overall strategy of trial counsel." Id. at 1333 (citation and internal quotation marks omitted). To succeed on a claim that Attorney Incorvati's failed to review discovery, Irby must demonstrate his attorney's investigation efforts were inadequate and such inadequacy resulted in an actual and substantial disadvantage to his defense. Id. A review of the record indicates Irby's claims are meritless and he has provided no evidence to support his claim of ineffective assistance. *See* United States v. Brown, 2017 U.S. Dist. LEXIS 110438 *6-*8 (E.D. Ky. July 17, 2017) (district court found petitioner's claims regarding counsel's ineffectiveness as to discovery not supported by the record and "were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690).

17

Irby's claim that it "is not clear as to whether the drugs recovered had gone to the crime lab to be analyzed" (R. 44-1: Memorandum in Support at PageID 256) is contradicted by the record. Provided as part of discovery in the package prepared on June 29, 2015, were "lab reports." See Attachment B: Govt. Discovery Ltr with lab reports attached. Here, "the record conclusively shows that the petitioner is entitled to no relief" Blanton v. United States, 94 F.3d 227, 236 (6th Cir. 1996) and Irby's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, [and] conclusions rather than statements of fact." Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999).

In the context of a guilty plea, in order for Irby to prove prejudice, he "must show that there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). This analysis often requires an assessment of success at trial in the absence of counsel's errors, such as whether or not an unpursued defense would have been successful or whether uninvestigated evidence would have changed the outcome. Id. Irby has not shown that without his counsel's alleged shortcomings, he would not have plead guilty but would have insisted on standing trial.

Attorney Incorvati's assistance was neither unreasonable nor constitutionally deficient. Since counsel's performance did not fall below the objective standard of reasonableness, the Court need not address Strickland's second prong, the issue of prejudice.

In short, Attorney Incorvati effectively represented Irby throughout the pendency of his case and secured a plea agreement in which the government agreed to dismiss one count of the indictment. Counsel performed exactly as one would reasonably expect. Clearly, this does not qualify as ineffective assistance of counsel. Since Strickland required "highly deferential" judicial scrutiny of counsel's decisions, Irby's claim that his counsel was ineffective is denied.

As part of his § 2255 Motion, Irby requests an evidentiary hearing. (R. 44-1Memorandum in Support at PageID 257). Pursuant to 28 U.S.C, § 2255 the district court shall "grant a prompt hearing" to address a prisoner's claims "unless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." Green v. United States, 445 F.2d 847, 848 (6th Cir. 1971). Based upon the meritless claims in his petition and the clear record, it is the government's position that Irby is not entitled to an evidentiary hearing. A petitioner is entitled to an evidentiary hearing under § 2255 only if the court determines such a hearing is necessary. If it appears that an evidentiary hearing is not required, the judge shall make such disposition on the motion as justice requires.

An evidentiary hearing is not warranted where allegations are "vague, conclusory, or palpably incredible." Machibroda v. United States, 368 U.S. 487, 495 (1962). A review of the entire record in this case supports a finding by this Court that Irby has not met his burden, by the preponderance of the evidence, and his motion should be denied, without the necessity of an evidentiary hearing. See Bryan v. United States, 721 F.2d 572 (6th Cir. 1983). The Sixth Circuit has routinely held that "a hearing is unnecessary where, as here, the motion, files and records conclusively show that the prisoner is not entitled to relief." Id. at 577.

## **CONCLUSION**

For the foregoing reasons, the Motion to Vacate Conviction and/or Correct Sentence Pursuant to 28 U.S.C. § 2255 is DENIED.

IT IS SO ORDERED.          s/John R. Adams
DATED: 4/15/19            UNITED STATES DISTRICT JUDGE